#26599-a-LSW

**2014 S.D. 11**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

MARK OUTKA,                              Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE CRAIG A. PFEIFLE
Judge

* * * *

MARTY J. JACKLEY
Attorney General

MATT NAASZ
Assistant Attorney General
Pierre, South Dakota                     Attorneys for plaintiff
                                         and appellee.


TERRY L. PECHOTA
Rapid City, South Dakota                 Attorney for defendant
                                         and appellant.

* * * *

CONSIDERED ON BRIEFS
ON AUGUST 27, 2013

OPINION FILED **02/26/14**

#26599

WILBUR, Justice

[¶1.]　　　　Mark Outka appeals the magistrate court's denial of his post-sentencing motion to withdraw his guilty plea.

## FACTS AND PROCEDURAL HISTORY

[¶2.]　　　　Outka was charged by information with alternative counts of simple assault for an altercation involving his live-in girlfriend, Jillian Anderson. Although the caption of the information included the words "domestic abuse," the rest of the information made no reference to domestic abuse. The only statute referenced in the information was SDCL 22-18-1, the simple assault statute.

[¶3.]　　　　The State and Outka, who was represented by counsel, entered into a plea agreement whereby Outka pleaded guilty to simple assault under SDCL 22-18-1(4).[1] Outka admitted that he yelled at Anderson and threatened to kick her out of the house. Outka did not contest the "domestic abuse" notation in the caption of his information before entering his guilty plea. Nor did he challenge whether the assault involved domestic abuse. Additionally, Outka's attorney acknowledged at Outka's preliminary hearing that Outka would plead guilty to simple assault (domestic abuse). The magistrate court sentenced Outka to 360 days in jail, with all 360 days suspended, and one year of probation.

[¶4.]　　　　Outka subsequently appealed his conviction to circuit court. The circuit court remanded the matter to the magistrate court to allow Outka to move to

---

1.　　　Outka pleaded guilty to Count 3 simple assault, which alleged that Outka committed the public offense of simple assault and "did then and there attempt by physical menace or credible threat to put Anderson in fear of imminent bodily harm, with or without the actual ability to harm her, in violation of SDCL 22-18-1(4)."

-1-

withdraw his guilty plea. The magistrate court, in its denial of Outka's motion to withdraw the plea, determined that the information was sufficient and that Outka knowingly and voluntarily pleaded guilty to simple assault (domestic abuse). Outka appealed to circuit court, which affirmed the decision of the magistrate court.

[¶5.]     Outka appeals to this Court, arguing that he should have been allowed to withdraw his plea because the charging information (1) was insufficient, (2) failed to conform to pleading requirements, and (3) failed to inform him of the charges against him. Outka further argues that SDCL 25-10-34 is unconstitutional. Finally, he contends that he did not knowingly and voluntarily plead guilty to simple assault.

## STANDARD OF REVIEW

[¶6.]     "When a defendant moves to withdraw his guilty plea after [a] sentence has been imposed, the trial court will set aside the judgment of conviction and permit the defendant to withdraw his plea only to correct manifest injustice." *State v. McColl*, 2011 S.D. 90, ¶ 8, 807 N.W.2d 813, 815 (quoting *State v. Lohnes*, 344 N.W.2d 686, 687-88 (S.D. 1984)); *see also* SDCL 23A-27-11. A defendant seeking withdrawal of a plea on the grounds of manifest injustice must "show entitlement to relief by clear and convincing evidence." *McColl*, 2011 S.D. 90, ¶ 9, 807 N.W.2d at 816 (citation omitted). Normally, "[t]he decision to allow a defendant to withdraw a guilty plea is a matter solely within the discretion of the trial court and is reviewed under an abuse of discretion standard." *State v. Goodwin*, 2004 S.D. 75, ¶ 4, 681 N.W.2d 847, 849 (citing *State v. Wahle*, 521 N.W.2d 134, 136-37 (S.D. 1994)).

[¶7.]    While "the trial court's discretion to allow withdrawal of a guilty plea prior to 'sentencing should be exercised liberally in favor of withdrawal,' . . . a stricter standard should be applied when a defendant requests to withdraw a guilty plea after a sentence has been imposed." *Id.* (quoting *Wahle*, 521 N.W.2d at 137). The purpose of the stricter standard is "to prevent a defendant from testing the weight of potential punishment, and then withdrawing the plea if he finds the sentence unexpectedly severe." *Lohnes*, 344 N.W.2d at 688 (quoting *United States v. McKoy*, 645 F.2d 1037, 1040 n.3 (D.C. Cir. 1981)). While a decision to permit withdrawal of a guilty plea is normally within the trial court's discretion, when a defendant alleges that his plea is constitutionally infirm this Court must conduct a de novo review to determine whether the alleged constitutional violation occurred. *See Goodwin*, 2004 S.D. 75, ¶ 4, 681 N.W.2d at 849; *see also State v. Cain*, 816 N.W.2d 177, 183 (Wis. 2012).

## DECISION

[¶8.]    **1.    Whether the information was sufficient.**

[¶9.]    Outka first argues that he should be permitted to withdraw his guilty plea because the information was not sufficient. Specifically, Outka alleges that there is no offense titled "simple assault (domestic abuse)." Effectively, Outka asks this Court to decide whether the practice of tagging a domestic abuse notation on an assault charge, consistent with SDCL 25-10-34, changes the nature of the crime so that it is no longer the public offense listed in SDCL 22-18-1 (the simple assault statute). Because Outka did not object to the alleged defect in the caption of the information prior to pleading guilty, he is only entitled to relief if he can illustrate a

jurisdictional defect. SDCL 23A-8-3(3).[2] Outka contends that because the caption of the information included the words "domestic abuse," he was charged with an offense that does not exist. Therefore, he claims the information failed to state a public offense, depriving the magistrate court of jurisdiction.

[¶10.] The State argues that the domestic abuse notation does not change the fact that Outka was charged with the public offense of simple assault. The State asserts that the notation in the caption merely indicates the relationship between the victim and the perpetrator.

[¶11.] The information was sufficient to charge Outka with a public offense: simple assault. It cited the relevant statute for and defined the elements of simple assault. And the information provided a factual allegation, which if proven, would establish a violation of simple assault. In drafting the information the state's attorney complied with the statutory requirement found in SDCL 25-10-34, which provides that:

> The state's attorney of the county where a crime is believed to have been committed shall indicate on the summons, complaint, information, indictment, arrest warrant, and judgment of conviction whether the charge involves domestic abuse.

[¶12.] Outka does not contest that the body of the information charged him with simple assault in violation of SDCL 22-18-1(4). He only takes issue with the caption of the information. But even if the caption of the information contains

---

2. SDCL 23A-8-3(3) requires the following defect to be raised prior to trial:

> (3) Defenses and objections based on defects in the indictment or information (other than that it fails to show jurisdiction in the court or to charge an offense which objections shall be noticed by the court at any time during the pendency of the proceedings)[.]

errors, it is the body of the information that defines the charged crime. *See State v. Wurdemann*, 120 N.W.2d 317, 319 (Minn. 1963); *State v. Bossart*, 241 N.W. 78, 81 (N.D. 1932); *State v. McIntyre*, 13 N.W. 287, 288 (Iowa 1882). Because the body of the information clearly charged Outka with an act punishable by statute—simple assault—he was charged with a public offense.

[¶13.]        Outka next argues that domestic abuse is an essential element that must be charged in the body of the information and proven beyond a reasonable doubt because, according the United States Supreme Court decision of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), if he is convicted he may be subject to increased state and federal consequences. The State contends that under SDCL 23A-8-3(3) this defect in the information is not jurisdictional and was therefore waived because it was not raised prior to Outka's guilty plea.

[¶14.]        Outka's reliance on *Apprendi* is misplaced for two reasons. First, domestic abuse is not an element of simple assault. *See* SDCL 22-18-1. Additionally, even if the domestic abuse notation could somehow be considered an element of simple assault that increased the penalty Outka could receive, the failure to include an element in an information does not constitute a jurisdictional defect. *United States v. Cotton*, 535 U.S. 625, 630-31, 122 S. Ct. 1781, 1784-85, 152 L. Ed. 2d 860 (2002) (holding that defects in an indictment are not jurisdictional errors). Because this error or defect does not deprive the court of jurisdiction, an objection based on the failure to include an element in an information is waived by a guilty plea. *See United States v. Todd,* 521 F.3d 891, 895 (8th Cir. 2008).

[¶15.] Furthermore, Outka's *Apprendi* argument fails because Outka was not subjected to an enhanced sentence as a result of the domestic abuse notation. The notation did not change the punishment Outka could have received for a conviction of simple assault, it only indicated that the crime involved domestic abuse.[3] Likewise, removing the domestic abuse notation from the caption of the information would not lessen the maximum penalty Outka could have received. Outka cannot show that his sentence exceeded the maximum authorized for simple assault because his sentence fit within the authorized range of punishment for that offense. Because the maximum possible sentence is the same with or without the domestic abuse notation, the notation is not an *Apprendi* element that must be proven beyond a reasonable doubt. The notation is merely an indication of the relationship between the victim and the perpetrator.[4]

---

3. The domestic abuse notation is not meant to increase a defendant's punishment. Its primary purpose is to gather statistical data regarding the number of instances of domestic abuse in South Dakota. SDCL 25-10-37.

4. Outka incorrectly asserts that a potential restriction on future firearm possession is an increased punishment. A restriction on firearm ownership is not a direct consequence so as to implicate the Sixth Amendment. *See S. Union Co. v. United States*, ___ U.S. ___, ___, 132 S. Ct. 2344, 2352, 183 L. Ed. 2d 318 (2012) (holding that the rule in *Apprendi* applies to cases where significant criminal fines are imposed as well as where the sentence is imprisonment or death). Additionally, it is important to note that an underlying conviction of simple assault, or any other crime involving the use of force, may still subject an individual to criminal action under 18 U.S.C. § 922(g), provided the government can prove the element of a domestic relationship beyond a reasonable doubt. *See generally United States v. Hayes*, 555 U.S. 415, 426, 129 S. Ct. 1079, 1087, 172 L. Ed. 2d 816 (2009) (holding that the existence of a domestic relationship need not be a defining element of the predicate offense to support a conviction for possession of a firearm by a person convicted of a misdemeanor crime of domestic violence).

[¶16.]     Outka also relies on *State v Lodermeier*, 481 N.W.2d 614 (S.D. 1992), for the proposition that failing to set forth all elements of an offense in an information renders it defective. In *Lodermeier*, the missing element came directly from the statute. *Id.* at 618-19. We held that the omission of the element was not fatal because instructions and proof at trial included the missing element. *Id.* at 619. But in this case, domestic abuse is not an element of the charge against Outka. Outka's claim regarding failure to include an element does not amount to a jurisdictional defect, therefore, pursuant to SDCL 23A-8-3(3), this claim is waived by his guilty plea. Based upon this argument, the magistrate court did not abuse its discretion in denying Outka's motion to withdraw his guilty plea.

[¶17.]     **2.    Whether the charging information conformed to pleading requirements.**

[¶18.]     Outka argues that the information failed to conform to pleading requirements under SDCL 23A-6-4 because it failed to reference all the statutes he had allegedly violated. Outka contends that failure to reference the domestic abuse statute (SDCL 25-10-34) in the information deprived the court of jurisdiction. The State argues that because Outka did not object to this alleged defect at trial, this argument is waived by Outka's guilty plea.

[¶19.]     As we noted above, generally, defects in the information must be raised prior to trial. SDCL 23A-8-3(3). Outka's argument under SDCL 23A-6-4 does not allege a jurisdictional defect. *See Cotton*, 535 U.S. at 631, 122 S. Ct. at 1785. Outka's failure to object to the defect in his information prior to entering his guilty plea renders it unpreserved on appeal. *State v. Lachowitzer,* 314 N.W.2d 307, 309 (S.D. 1982). For these reasons, Outka's argument is waived by his guilty plea. The

magistrate court did not abuse its discretion in denying Outka's motion to withdraw his guilty plea based upon this argument.

[¶20.]      **3.      Whether reference to domestic abuse deprived Outka of his constitutional rights.**

[¶21.]      Outka claims that the domestic abuse notation in the caption of the information deprived him of his constitutional right to be informed of the nature and cause of the accusation against him under both the Sixth Amendment of the United States Constitution and Article VI, § 7 of the South Dakota Constitution.

[¶22.]      "[A]n information or indictment must apprise the defendant with reasonable certainty of the accusation against him so that he may prepare his defense and plead the judgment as a bar to a subsequent prosecution for the same offense." *State v. Sinnott*, 72 S.D. 100, 104, 30 N.W.2d 455, 456-57 (1947), *cert. denied*, 334 U.S. 844, 68 S. Ct. 1512, 92 L. Ed. 1768 (1948).  However, as discussed above, Outka did not object to the information before he pleaded guilty.  Because Outka asserts that the information is defective for the first time on appeal, this argument is waived so long as his guilty plea is knowing and voluntary.

[¶23.]      **4.      Whether SDCL 25-10-34 is constitutional.**

[¶24.]      Outka challenges the constitutionality of SDCL 25-10-34.  "Challenges to the constitutionality of a statute are reviewed de novo." *State v. Asmussen,* 2003 S.D. 102, ¶ 2, 668 N.W.2d 725, 728 (citing *State v. Allison,* 2000 S.D. 21, ¶ 5, 607 N.W.2d 1, 2).  "This Court recognizes a strong presumption of [the] constitutionality" of a statute.  *State v. Stark,* 2011 S.D. 46, ¶ 10, 802 N.W.2d 165, 169 (citation omitted).  "To be invalidated a statute must be proved a breach of legislative power beyond a reasonable doubt." *Id.* (citation omitted).  "Only when

the unconstitutionality of a statute is plainly and unmistakably shown will we declare it repugnant to our Constitution." *Id.* (citation omitted). "[I]f a statute can be construed so as not to violate the Constitution, that construction must be adopted." *Id.* (citation omitted).

[¶25.]     Outka suggests a number of reasons why SDCL 25-10-34 is unconstitutional; however, his primary argument is that SDCL 25-10-34 violates the separation of powers by granting state's attorneys the ability to determine whether a crime involves domestic abuse.[5] Outka argues that this is an improper delegation of legislative power. Under Article II of the South Dakota Constitution, "the Legislature cannot abdicate its essential power to enact basic policies into law or delegate such power to any other department." *State v. Moschell*, 2004 S.D. 35, ¶ 15, 677 N.W.2d 551, 558. "However, once the Legislature has created broad policy through its enactments, it may delegate in the execution of that policy certain quasi-legislative powers or functions to executive or administrative officers or agencies, provided it adopts standards to guide those officers or agencies in the exercise of such powers." *Id.* (citing *Boe v. Foss*, 76 S.D. 295, 313, 77 N.W.2d 1, 11 (1956)). "The test is to examine the challenged legislation to learn whether it delegates the power to create basic policy or fails to supply intelligible standards as guides in the exercise of the power delegated." *Id.* ¶ 16, 677 N.W.2d at 559 (citation omitted).

---

5.     Outka first argues that SDCL 25-10-34 is unconstitutional as applied. *State v. Andrews* forecloses this argument. 2007 S.D. 29, 730 N.W.2d 416. Under *Andrews*, a guilty plea waives a claim that a statute is unconstitutional as applied, thus Outka can only present a facial challenge to SDCL 25-10-34. *Id.* ¶ 5, 730 N.W.2d at 419.

[¶26.] The Legislature performed its duty here. SDCL 25-10-34 requires the state's attorney to indicate whether an offense involves domestic abuse. There is no discretion for the state's attorney to decide whether to affix the notation when a case involves domestic abuse. Additionally, the Legislature defined domestic abuse in SDCL 25-10-1.[6] The Legislature established a clear policy and intelligible standards; therefore, the Legislature performed its duty under Article II of the South Dakota Constitution.

[¶27.] Outka next argues that SDCL 25-10-34 is facially vague and overbroad. Our standard for determining whether a statute is vague or overbroad is well established:

> In examining a facial challenge, a court must first determine whether the enactment reaches a substantial amount of constitutionally protected conduct. Where the enactment does not reach constitutionally protected conduct, the overbreadth challenge must fail, and the complainant may succeed in a vagueness challenge only if the enactment is impermissibly vague in all of its applications.

*State v. Andrews*, 2007 S.D. 29, ¶ 6, 730 N.W.2d 416, 419 (per curiam) (internal citations and quotation marks omitted). Outka fails to either allege or show that the statute reaches any constitutionally protected conduct. Therefore, the statute is not overbroad.

---

6. SDCL 25-10-1(1) defines domestic abuse as "physical harm, bodily injury, or attempts to cause harm or bodily injury, or the infliction of fear of imminent physical harm or bodily injury between family or household members." SDCL 25-10-1(2) defines family or household members as "spouses, former spouses, or persons related by consanguinity, adoption, or law, persons living in the same household, persons who have lived together, or persons who have a child together."

[¶28.] Outka's assertion that the statute is vague also fails. Outka argues that the phrase "involving domestic abuse" in SDCL 25-10-34 is unconstitutionally vague. "[V]agueness challenges that do not involve the First Amendment must be examined in light of the specific facts of the case at hand and not with regard to the statute's facial validity." *Andrews,* 2007 S.D. 29, ¶ 6, 730 N.W.2d at 419 (citations omitted). Outka never contested the fact that his case involved domestic abuse.

[¶29.] Instead, Outka presents a hypothetical situation in his brief that might raise an issue of vagueness. But the United States Supreme Court has instructed "courts to 'examine the complainant's conduct before analyzing other hypothetical applications of the law,' because 'a plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to others.'" *Id.* (quoting *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495, 102 S. Ct. 1186, 1191, 71 L. Ed. 2d 362 (1982)). We decline to address this hypothetical and will only look at whether the statute is vague in light of the specific facts of this case. Given that Outka does not claim that the domestic abuse notation is inapplicable to his case, his challenge to this statute on the basis of vagueness fails.

[¶30.] **5.** **Whether the magistrate court adequately advised Outka.**

[¶31.] Outka asserts that his plea was not knowing and voluntary because (1) he was not advised that he could not be compelled to testify against himself and (2) he was not advised of the maximum possible sentence.

[¶32.] A guilty plea is a waiver of several trial rights guaranteed by the Fifth and Sixth Amendments; therefore, as a matter of due process, a guilty plea must be

knowing and voluntary. *Boykin v. Alabama*, 395 U.S. 238, 242-43, 89 S. Ct. 1709, 1712, 23 L. Ed. 2d 274 (1969). "Such a plea is intelligent and voluntary when the accused has a full understanding of his constitutional rights and, having that understanding, waives these rights by a plea of guilty." *State v. Beckley*, 2007 S.D. 122, ¶ 8, 742 N.W.2d 841, 843 (quoting *Lodermeier v. State*, 273 N.W.2d 163, 164 (S.D. 1978)). Those rights a defendant gives up when pleading guilty are: (1) the privilege against self-incrimination, (2) the right to a trial by jury, and (3) the right to confront one's accusers. *Boykin*, 395 U.S. at 243, 89 S. Ct. at 1712. "The record must show in some manner that the defendant understood his rights in order for the defendant's plea to be entered intelligently and voluntarily." *State v. Apple*, 2008 S.D. 120, ¶ 10, 759 N.W.2d 283, 287 (citation omitted). A showing that a plea was not knowingly and voluntarily entered is one way to prove a manifest injustice so as to warrant withdrawal of a guilty plea. *See Goodwin*, 2004 S.D. 75, ¶ 4, 681 N.W.2d at 849; *United States v. Crusco*, 536 F.2d 21, 26-27 (3d Cir. 1976).

[¶33.] To ensure a plea is knowing and voluntary, SDCL 23A-7-4 provides guidelines a court should follow before accepting a guilty plea. *Goodwin*, 2004 S.D. 75, ¶ 7, 681 N.W.2d at 850. However, "SDCL 23A-7-4 has been characterized as only a 'procedural safeguard' for determining that a guilty plea is knowing and voluntarily entered." *Beckley*, 2007 S.D. 122, ¶ 10, 742 N.W.2d at 844 (citing *State v. Miller*, 2006 S.D. 54, ¶ 18, 717 N.W.2d 614, 620). Because it is merely a safeguard, "failure to advise a defendant of all constitutional and statutory rights does not necessarily vitiate a guilty plea." *Id.* Therefore, "[w]e look to the totality of the circumstances when ascertaining whether a plea was made knowingly and

voluntarily." *State v. Olson*, 2012 S.D. 55, ¶ 20, 816 N.W.2d 830, 836 (quoting *Beckley*, 2007 S.D. 122, ¶ 14, 742 N.W.2d at 846). "In examining the totality of the circumstances we have taken into consideration the following factors: the defendant's age; his prior criminal record; whether he is represented by counsel; the existence of a plea agreement; and the time between advisement of rights and entering a plea of guilty." *Id.* (quoting *Beckley*, 2007 S.D. 122, ¶ 14, 742 N.W.2d at 846).

[¶34.] Outka argues that the magistrate court's advisement that he could not be compelled to testify against himself was inadequate. But the record reveals that the magistrate court advised Outka of his *Boykin* rights—that his guilty plea would waive his right to a jury trial, his right to cross-examine or confront witnesses, and that his testimony would waive his right to remain silent.

[¶35.] Outka also contends that he was not advised about the maximum sentence he could receive as required by SDCL 23A-7-4(1). While the record does not reveal that Outka was advised of the maximum possible sentence when he entered his guilty plea, he was advised of the maximum sentence during his initial appearance before the same judge less than two months earlier. Additionally, the failure to re-advise Outka of the maximum sentence is not constitutionally deficient when viewed in light of the totality of the circumstances.

[¶36.] When viewed in totality, the record shows that Outka understood his rights so that his plea was knowing and voluntary. Outka was thirty-two years old at the time he was sentenced. He had previous experience with the justice system. He was also represented by counsel throughout the proceedings and his guilty plea

was the result of a plea agreement. Finally, prior to accepting Outka's guilty plea, the magistrate court determined that his plea was not the result of threats or coercion. Because Outka's plea was knowingly and voluntarily entered, the magistrate court did not abuse its discretion in denying Outka's motion to withdraw his plea as Outka failed to establish the existence of a manifest injustice by clear and convincing evidence.

[¶37.] Outka argues that he was not advised that he was pleading guilty to simple assault (domestic abuse). The record shows otherwise. "[I]t is not required at the time the guilty plea is made that the specific elements of the offense charged be explained to a defendant." *Clark v. State*, 294 N.W.2d 916, 919 (S.D. 1980) (citing *United States v. Kriz*, 586 F.2d 1178, 1180 (8th Cir. 1978) (per curiam)). "All that is necessary is that an understanding of the nature of the charge be conveyed to a defendant." *Id.* (citing *State v. Driver*, 290 N.W.2d 856 (S.D. 1980)) (citations omitted).

[¶38.] At Outka's initial appearance the magistrate court advised Outka of the charges against him. Although not personally present at the preliminary hearing, Outka acknowledged through his attorney that he would be entering a plea for one count of simple assault (domestic abuse). Outka subsequently pleaded guilty to simple assault and admitted to facts that supported his plea. He never disputed that the assault charge involved a domestic relationship. The facts, taken in totality, establish that Outka understood the nature of the charge to which he was pleading guilty.

[¶39.]      Finally, Outka contends that he should have been advised that his guilty plea would prohibit him from possessing or controlling a firearm.[7]  We have held that "it is not necessary for a court to inform a defendant of the collateral consequences of a guilty plea in order for a plea to be intelligently and voluntarily entered." *State v. Timperley*, 1999 S.D. 75, ¶ 15, 599 N.W.2d 866, 868 (quoting *Gregory v. State*, 353 N.W.2d 777, 781 (S.D. 1984)).  "The distinction between direct and collateral consequences of a plea, while sometimes shaded in the relevant decisions, turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." *Id.* (quoting *George v. Black*, 732 F.2d 108, 110 (8th Cir. 1984)).  Thus, the question before this Court is whether a potential restriction on future firearm possession is a direct or collateral consequence.

[¶40.]      We have not addressed whether a potential bar to future firearm possession is a collateral consequence.  However, other jurisdictions have held that a potential restriction on firearm ownership is a collateral consequence, and thus a court is not required to advise a defendant of that consequence prior to accepting a defendant's guilty plea. *See State v. Liefert*, 43 P.3d 329, 335-36 (Mont. 2002); *Saadiq v. State*, 387 N.W.2d 315, 325 (Iowa 1986); *State v. Kosina*, 595 N.W.2d 464, 466-68 (Wis. Ct. App. 1999).  The rationale for this rule is that future restrictions on firearm possession are often subject to an additional federal criminal proceeding,

---

7.      Whether Outka is barred from possessing a firearm under 18 U.S.C. § 922(g) and SDCL 22-14-15.2 is not before this Court.

and thus are not a direct consequence of the underlying criminal act. *Liefert*, 43 P.3d at 336.

[¶41.] Federal courts have also determined that a judge need not warn about potential restrictions on future firearm possession. For example, the Eighth Circuit held in *United States v. Amerson* that a court does not have a duty to inform a defendant of the collateral consequences of his or her plea. 599 F.3d 854, 855-56 (8th Cir. 2010) (per curiam). In fact, the court specifically held that "[t]he possibility [a defendant] would be charged under [18 U.S.C.] § 922(g)(9) is not a direct consequence." *Id*. at 855. Thus, the Eighth Circuit has determined that a trial judge need not advise a defendant of the possibility of future firearm restrictions prior to accepting a guilty plea. *See id.*

[¶42.] We hold that the possibility of a future restriction on the possession of a firearm is a collateral consequence of Outka's guilty plea. As a result, the magistrate court's failure to warn Outka about the possibility of a future firearm restriction is not a manifest injustice. The magistrate court did not abuse its discretion by denying Outka's motion to withdraw his plea.[8]

---

8. Outka also cites the United States Supreme Court case of *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010), for the proposition that the judge should have informed him that he would not be able to possess a firearm in the future. *Padilla* is unhelpful here. *Padilla* involved an ineffective assistance of counsel claim due to counsel's failure to warn about the risk of deportation. Outka has not argued that his counsel was ineffective.

## CONCLUSION

[¶43.] Outka did not meet his burden to establish the existence of a manifest injustice by clear and convincing evidence. We affirm the denial of Outka's motion to withdraw his guilty plea.

[¶44.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER and SEVERSON, Justices, concur.